STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1408

STATE OF LOUISIANA

VERSUS

DARRELL W. WESTMORELAND

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 74648
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy and Phyllis M. Keaty, Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

Asa Allen Skinner
District Attorney
Terry W. Lambright
Assistant District Attorney
Post Office Box 1188
Leesville, LA   71446
(337) 239-2008
COUNSEL FOR APPELLEE:
        State of Louisiana

Dmitrc I. Burnes
Burnes & Burnes
711 Washington Street
Alexandria, LA   301
(318) 448-0482
COUNSEL FOR DEFENDANT/APPELLANT:
        Darrell W. Westmoreland

**Darrell W. Westmoreland**
**Vernon Correctional Center**
**3755 Camp Baker Road**
**Leesville, LA   71446**

AMY, Judge.

The defendant was convicted of one count of simple arson over $500.00. The defendant was sentenced to six years at hard labor. He was also ordered to pay a fine of $1,000.00, plus costs. The trial court suspended the defendant's sentence and placed him on supervised probation for a period of three years. The trial court also ordered the defendant to make restitution to the victims, plus, as a condition of probation, the defendant was ordered to serve twelve months imprisonment in the parish jail. The defendant appeals his conviction and sentence. For the following reasons, we affirm and remand to the trial court with instructions.

**Factual and Procedural Background**

The defendant, Darrell W. Westmoreland, was charged in Vernon Parish with one count of simple arson over $500.00, a violation of La.R.S. 14:52(B). The defendant allegedly set a series of fires that resulted in damage to a substantial amount of timber. On February 11, 2010, a jury found the defendant guilty of the sole charge of simple arson over $500.00. The defendant filed a motion for post-verdict judgment of acquittal. After a hearing, the trial court took the motion under advisement. The trial court subsequently denied the motion for post-verdict judgment of acquittal and, on the same date, imposed sentence. The defendant was sentenced to six years at hard labor, suspended, a fine of $1,000.00 plus court costs, supervised probation for three years, restitution to the victims, and as a condition of probation, twelve months imprisonment in the Vernon Parish jail.

After sentencing, the defendant filed a motion to reconsider sentence. The motion was denied by the trial court without a hearing. The defendant appeals, asserting the following as error:

> 1.   The state failed to present sufficient evidence at trial to support the verdict of guilty of the felony charge in the

amended Bill of Information of violation of La. R.S. 14:52, simple arson with damages amounting to over $500.00.

2. The trial court erred by improperly denying defendant's *Motion for Post-Verdict Judgment of Acquittal Pursuant to Code of Criminal Procedure Article 821*.

3. The trial court erred by imposing a sentence which violates United States Constitution's prohibition against cruel and unusual punishment as stated in the 8th Amendment and violates Louisiana Constitution's similar prohibition against cruel and unusual punishment as stated in Article 1, Section 20, when, as a condition of probation, defendant was ordered to serve twelve months in the Vernon Parish jail.

4. The trial court erred by sentencing defendant unnecessarily harshly in order to send a message to others.

5. The trial court erred in denying defendant's *Motion to Reconsider Sentence Pursuant to C.Cr.P. Art. 881.1*.

6. Defendant's sentence does not comply with Louisiana Code of Criminal Procedure Article 872 which requires that the sentence must rest upon a valid and sufficient indictment.

Additionally, the defendant filed a *pro se* brief, alleging that the State committed prosecutorial misconduct, that there was insufficient evidence to support the conviction, and that the restitution was excessive.

**Discussion**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent.

The defendant's motion for post-verdict judgment of acquittal was heard on August 6, 2010; however, the matter was taken under advisement. On August 13,

2

2010, the trial court denied the motion for post-verdict judgment of acquittal and immediately sentenced the defendant.

Louisiana Code of Criminal Procedure Article 873 requires a delay of twenty-four hours before sentencing after the denial of a motion for new trial or in arrest of judgment. Although a post-verdict judgment of acquittal is not mentioned in Article 873, jurisprudence indicates that it has been applied to denials of a post-verdict judgment of acquittal.[1]

However, there is no violation of Article 873 where there is an express or implied waiver of the delay. *State v. C.S.D.*, 08-877 (La.App. 3 Cir. 2/4/09), 4 So.3d 204. A defendant can expressly waive the delay when he announces his readiness for sentencing or responds affirmatively when the trial court asks if he wants to be sentenced on that date. *State v. Schmidt*, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, *writ denied*, 00-2950 (La. 9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205 (2002). A panel of this court has previously found that a defendant may impliedly waive the delay where there is evidence in the record that the defendant was aware of the sentencing date, did not object to the delay, and participated in the sentencing hearing and where the trial court thoroughly set forth its reasons for sentencing. *Id.*[2]

---

[1] *State v. Youngblood*, 41,976 (La.App. 2 Cir. 5/9/07), 957 So.2d 305, *writ denied*, 07-1226 (La. 12/14/07); *State v. Boyance*, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denied*, 06-1285 (La. 11/22/06), 970 So.2d 530; *State v. Agee*, 08-203 (La.App. 4 Cir. 7/23/08), 990 So.2d 95, *writ denied*, 08-2190 (La. 5/1/09), 6 So.3d 810; *State v. Davis*, 09-1109 (La.App. 5 Cir. 9/14/10), 45 So.3d 203. *Compare State v. Banks*, 503 So.2d 529 (La.App. 3 Cir.), *remanded on other grounds*, 503 So.2d 1007 (La.1987); *State v. Scott*, 98-2642 (La.App. 4 Cir. 2/16/00), 754 So.2d 1108, *writ denied*, 00-723 (La. 9/29/00), 769 So.2d 1219.

[2] *See also State v. Brannon*, 07-431 (La.App. 3 Cir. 12/5/07), 971 So.2d 511, *writ denied*, 07-2465 (La. 5/9/08), 980 So.2d 689; *State v. Giles*, 04-359 (La.App. 3 Cir. 10/6/04), 884 So.2d 1233, *writ denied*, 04-2756 (La. 3/11/05), 896 So.2d 62.

In this case, sentencing was rescheduled twice. The trial court held a hearing on the defendant's motion for post-verdict judgment of acquittal one week before the sentencing hearing. When the trial court took the motion for post-verdict judgment of acquittal under advisement, it informed the defendant and trial counsel "[I]'m ordering that this matter be set again for Friday week at nine o'clock for the court to rule on these motions and, if necessary, to impose sentence."

At the sentencing hearing, after denying the defendant's motion for post-verdict judgment of acquittal, the trial court stated that it had reviewed the pre-sentence investigation and a statement submitted by the Defendant attached thereto and inquired whether the defendant wished to offer anything else at that time. The defendant's attorney stated that he had read the pre-sentence investigation, noted that the defendant was a first offender, requested that the defendant be sentenced under the provisions of La.Code Crim.P. art. 893, and requested that the defendant be allowed to retain a gun for hunting purposes.

We note that the defendant did not request a continuance of sentencing, nor did he object to being sentenced at that time. The record does not indicate that the defendant was unaware that he was to be sentenced on that date. In late May 2010, the defendant requested that the hearings for post-judgment verdict of acquittal, sentencing, and restitution be scheduled for the same date. At the hearing on the motion for post-verdict judgment of acquittal, the trial court took the matter under advisement and rescheduled the hearing date. The trial court stated that, if it denied the motion, it intended to sentence the defendant that same date. The trial court gave lengthy reasons for imposing sentence. Additionally, the defendant does not allege that he suffered any prejudice as a result of the failure to delay the imposition of

4

sentence. Therefore, we find that the defendant impliedly waived the twenty-four hour delay.

The transcript of the re-sentencing hearing held on August 13, 2010 reflects that the trial court imposed restitution as follows:

> I'm suspending the execution of the six years and placing him on supervised probation for a period of three years, subject to all the general and mandatory conditions of Article 895A and the following special conditions. First, that he can pay the fines and costs through a probation officer pay plan with a minimum monthly payment of fifty dollars. Next, he's to make restitution to the victims as follows: Campbell Timberland, the sum of eight thousand two hundred and thirty-nine dollars. Hancock Forest Management, the sum of twelve thousand nineteen dollar[s]. Forest Capital, the sum of five hundred and sixty seven dollars. *I'm not ordering this to be paid through a pay plan. I'm just ordering it as a condition of probation . . . . You're required to make that payment as a condition of probation. You can make it in multiple payments. You can make it in one lump sum payment, but before your probation ends it has to be paid*.

(Emphasis added.)

Louisiana Code of Criminal Procedure Article 895.1 requires that, when restitution is imposed as a condition of probation, "[t]he restitution payment shall be made, in discretion of the court, *either* in a lump sum or in monthly installments based on the earning capacity and assets of the defendant." (Emphasis added.) The trial court's ruling does not comply with this requirement.

Because we are affirming the defendant's conviction and sentence, as discussed below, we remand the matter to the trial court solely for a determination of the manner of restitution payment—either in a lump sum or in installments, based on the defendant's earning capacity and assets.

*Sufficiency of the Evidence*

In his first and second assignments of error, and in his first *pro se* assignment of error, the defendant contends that the evidence in this case is legally insufficient to convict him.

In *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352, a panel of this court reiterated the law with regard to review of sufficiency of the evidence claims:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* [*v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)] standard of review.

> Furthermore:

> In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal.

*Id.* at 344. (Citations omitted.)

Circumstantial evidence is "proof of collateral facts and circumstances." *State v. Harris*, 03-1297, p. 15 (La.App. 5 Cir. 3/30/04), 871 So. 2d 599, 610, *writs denied*, 04-1287, 04-1289 (La. 10/29/04), 885 So. 2d 583. Using reason and common sense, the existence of the main fact may be inferred from such circumstantial evidence. *Id.* The reviewing court's role is not to determine whether a defendant's suggested hypothesis creates an exculpatory explanation of the events, but is to "evaluate the

evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently **reasonable** that a rational juror could not have found proof of guilt beyond a reasonable doubt." *State v. Mitchell*, 99-3342, p. 7 (La. 10/17/00), 772 So.2d 78, 83. (Emphasis in original).

Simple arson, as applicable to this case, is defined in La.R.S. 14:52[3] as:

> A. Simple arson is the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in R.S. 14:51.[4]

> B. Whoever commits the crime of simple arson, where the damage done amounts to five hundred dollars or more, shall be fined not more than fifteen thousand dollars and imprisoned at hard labor for not less than two years nor more than fifteen years.

Motive is not one of the elements of the crime of simple arson. *State v. Interest of W.T.B.*, 34,269 (La.App. 2 Cir. 10/20/00), 771 So.2d 807.

In *State v. Martin*, 04-924 (La.App. 5 Cir. 1/25/05), 895 So.2d 55, the defendant was accused of setting fire to his ex-girlfriend's car and was charged with simple arson. One of the victim's neighbors testified that he saw a car matching the description of the defendant's vehicle leave the parking lot almost immediately after the victim's car "burst into flames." *Id.* at 56. Soon after, a police officer pulled the defendant over and discovered a container of flammable liquid in the defendant's vehicle. The victim testified that the defendant had been unstable after their breakup and that someone had let the air out of her tires prior to the fire. The fifth circuit found there was sufficient evidence to support the defendant's conviction. Although no witness actually saw the defendant set the fire, the fifth circuit held that "[t]here

---

[3] The legislature amended La.R.S. 14:52 in 2010. The pre-2010 version of the statute is used herein.

[4] Louisiana Revised Statutes 14:51 defines the crime of aggravated arson.

was, nonetheless, strong circumstantial evidence from which rational jurors could have concluded that defendant was the perpetrator." *Id.* at 59.

Similarly, in *State v. Combs*, 600 So.2d 751 (La.App. 2 Cir.), *writ denied*, 604 So.2d 973 (La.1992), the defendant was charged with simple arson after allegedly setting fire to a guesthouse. Several witnesses testified that, shortly before the fire started, they saw a man walking near the guesthouse carrying a container with a rag at its top. Although they could not make an in-court identification, two of the witnesses gave a description that generally matched the defendant. Another witness identified the defendant as the man he saw with the container. Further, the defendant had previously been ordered permanently off the premises by the victim and had made statements about having the victim's house burned. On appeal, the second circuit found that there was sufficient evidence to support the conviction.

In this case, Charles Earl, a criminal investigator with the Louisiana Department of Agriculture and Forestry, testified that, after the fires were extinguished, crews determined that there were three main areas of fire. The damaged parcels contained 2, 6, and 117 acres of timber, respectively, for a total of 125 acres. The State entered into evidence a aerial photograph that showed the locations of the fires.

Claude Moses, an employee of one of the victim-timber companies, testified that on the day of the fires he saw a black, extended cab Toyota Tacoma with a dog hunters' association sticker on the tailgate and a Sandy Creek Hunting Club sticker in the back window. Mr. Moses testified that the truck was stopped on the side of the road near one of the fires marked on the aerial photo. He testified that a tall, slender white man wearing glasses was standing in the grass. The man was "bent over a little

bit," but then turned and got in his truck. Mr. Moses testified that there was "no fire there" until the man got back in his truck. At that point, he said that the grass "just went up like a blow torch." When he drove by, the fire was about the size of a hat.

Mr. Moses followed the man for a few miles and got his license plate number. Mr. Moses was unable to identify the defendant in a photo lineup. However, he did identify the defendant's photo and another photo in the line-up as possibilities. He testified that he only saw the man's face in the side-view mirror of his truck.

Another employee of one of the victim-timber companies, Richard Leeper, testified that he was driving in the area in an attempt to locate the fires. He testified that he and another employee were driving towards the smoke on a private timber company road. They encountered a truck that matched the defendant's vehicle description driving in the opposite direction. He testified that the driver was an elderly white man with glasses. Mr. Leeper also testified that after they passed the truck, they came upon a series of four or five fires that got progressively larger. Later, when presented with a photo line-up, Mr. Leeper identified the defendant as the driver of the vehicle.

Although he did not mention the defendant specifically, Mr. Leeper testified that hunting lessees were not given permission to burn their property. At least one employee of the victim-timber companies specifically testified that the defendant did not have permission to set fire to their property.

Two officers with the Vernon Parish Sheriff's Office testified about their investigation into the fires. The officers testified that, after speaking to Mr. Moses, they ran the license plate number he had taken down and learned that it was registered to the defendant. Detective Noel Yates testified that, after viewing the fires, he

9

decided that any physical evidence would be destroyed by the firefighter's efforts to extinguish the blaze.

The officers further testified that, when they went to the defendant's house, a truck matching the description given by Mr. Moses and Mr. Leeper was parked in the driveway. Although the defendant contended that he had just woken up from a nap, both officers testified that the defendant was fully dressed and smelled of alcohol. The officers testified that the defendant told them that he had not gone in the direction of the fires that day. Further, they testified that, when questioned, the defendant told the officers that he had not seen anything suspicious that day and that he had gone into town that morning. Detective Yates testified that, when asked, the defendant indicated that he had taken a route to town that was in the opposite direction of the fires. According to the officers, when asked why someone saw his license plate number in the area of the fires, the defendant became agitated and started cursing.

The defendant was arrested the next day. Detective Yates testified that the defendant's story changed when he was questioned at the station. According to the detective, the defendant stated that he had been in the area of the fires and that he had broken off a pine limb in order to try to extinguish one of the fires. He also stated that he had not called the fire department to report any of the fires. A tape of the defendant's interview was played for the jury.

Mr. Leeper, Mark Williams, and Danny Harkreader testified about the value of the damages to their employer's property. All three identified the property as being located in one of the three burned areas on the aerial photo. Further, all three were accepted by the trial court as experts in timber valuation. Mr. Leeper testified that the damages to Campbell Timberland were $8,239.00. Mr. Harkreader testified

10

that the damages to Hancock Forest Management were $12,019.00. Mr. Williams testified that the damages to Forest Capital were $567.00.

The defendant's attorney vigorously cross-examined the State's witnesses, especially regarding the valuation of damages. The defendant did not call any rebuttal witnesses.

No witness actually saw the defendant light the fires. However, the evidence submitted, viewed in the light most favorable to the prosecution, is sufficient to support a conviction for simple arson over $500.00. The jury was free to accept or reject, in whole or in part, the testimony of the State's witnesses and was in the best position to weigh their testimony and evaluate their credibility.

Based on the evidence submitted at trial, the jury could have reached the conclusion that the defendant was seen in the location of more than one the fires, including one that was about "the size of a hat." Using reason and common sense, the jury could have concluded that the defendant had recently set that fire. The jury could have rejected the defendant's assertion that he was attempting to put the fire out when he was seen. Although the defendant contends that there was no evidence of any guilty conduct on his part, there was testimony that the defendant lied about his whereabouts on the day of the fire and subsequently changed his story. Further, the evidence presented at trial was sufficient for the jury to find that the defendant set fire to the property of the victim-timber companies' without permission and that the value of the damages was over $500.00.

The defendant additionally argues that the State did not prove that the offenses occurred in Vernon Parish, and thus, because venue is one of the elements of the crime, did not meet its burden of proof.

11

Louisiana Code of Criminal Procedure Article 615 addresses the venue requirement of an offense. It states:

> Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. *Venue shall not be considered an essential element to be proven by the state at trial*, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.

(Emphasis added.) If the defendant fails to raise the issue prior to trial, the issue of venue is considered waived. *State v. Johnson*, 43,843 (La.App. 2 Cir. 1/28/09), 2 So.3d 606, *writ denied*, 09-464 (La. 11/6/09), 21 So.2d 300.

The defendant did not raise this issue prior to trial and, therefore, it is considered waived.[5]

The defendant additionally argues that the trial court erred in denying his motion for post-verdict judgment of acquittal. Louisiana Code of Criminal Procedure Article 821 addresses motions for post-verdict judgment of acquittal. It states, in relevant part, that "[a] post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La.Code Crim.P. art. 821(B). Thus, a motion for post verdict judgment of acquittal tests the sufficiency of the evidence. *State v. Washington*, 41,182 (La.App. 2 Cir. 9/1/06), 939 So.2d 557, *writs denied*, 06-2320, 06-2468 (La. 5/18/07), 957 So.2d 148, 149. Because we have already determined that there is sufficient evidence to support the conviction, this argument is without merit.

---

[5] We note, however, that several witnesses testified as to the general location of the fires, including both street names as well as township and range numbers, that the offense was investigated by the Vernon Parish Sheriff's Office, that one of the damage estimates prepared by Hancock Forest Management—and submitted into evidence by the defense—identifies the property as in "Vernon County, LA," and that the aerial photograph entered into evidence is titled "Vernon Wildfires 2-25-2008."

The defendant's assignments regarding the insufficiency of the evidence are without merit.

*Excessiveness of Sentence*

In his third and fourth assignments of error, the defendant asserts that his sentence is unconstitutionally excessive. Specifically, the defendant argues that the trial court unconstitutionally ordered him to spend twelve months in the parish jail as a condition of his probation and that the trial court inappropriately imposed a harsh sentence as a deterrent to other potential offenders.

The standard for review of excessive sentence claims is well-settled. The sentence must not be "so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *State v. Gilmore*, 10-709, p. 4 (La.App. 3 Cir. 12/8/10), 54 So.3d 146, 149 (quoting *State v. Williams*, 07-490 (La.App. 3 Cir. 10/30/07), 969 So.2d 744). The reviewing court should not set aside a sentence that is within the statutory limits, absent an abuse of the trial court's wide discretion in sentencing matters. *Id.* However, a sentence that falls within the statutory limits may be excessive given the circumstances. *State v. Williams*, 96-37 (La.App. 3 Cir. 6/26/96), 677 So.2d 692.

A panel of this court recently reiterated the considerations used in deciding whether a sentence is unconstitutionally excessive, stating:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, it is well settled that sentences must be individualized to the particular offender and to the particular offense committed.

> Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge remains in the best position to assess the aggravating and mitigating circumstances presented by each case.

*State v. Archield*, 09-1116, p. 9 (La.App. 3 Cir. 4/7/10), 34 So.3d 434, 441 (quoting *State v. Smith*, 02-719 (La.App. 3 Cir. 2/12/03), 846 So.2d 786) (citations omitted).

In this case, the trial court was privy to a pre-sentence investigation, which it filed into the record, and gave lengthy reasons for the sentence at the sentencing hearing. The trial court considered the defendant's age, marital status, health, prior military service, employment history, education, and lack of drug or alcohol abuse. The trial court also considered that the defendant had previously been convicted of a DWI, but that he had completed his probation. Additionally, the trial court noted that there was economic harm to the victims in this case. Although the trial court stated that many of these factors weighed in favor of the defendant, the trial court concluded that this was not a minor offense. The trial court sentenced the defendant to six years at hard labor, suspended, a fine of $1,000.00, plus court costs, supervised probation for three years and, as a condition of probation, twelve months imprisonment in the parish jail. He was also ordered to make restitution to Campbell Timberland in the amount of $8,239.00, to Hancock Forest Management in the amount of $12,019.00, and to Forest Capital in the amount of $567.00.

*Imposition of Imprisonment as a Condition of Probation*

The crime of simple arson with damages over $500.00 is punishable by a fine of "not more than fifteen thousand dollars and imprison[ment] at hard labor for not less than two years nor more than fifteen years." La.R.S. 14:52(B). Additionally, Louisiana Code of Criminal Procedure Article 895(B)(1) permits the trial court to

14

impose, as a condition of probation, a term of imprisonment not at hard labor of up to two years.

In the case of *State v. Roy*, 606 So.2d 77 (La.App. 3 Cir. 1992), the defendant was convicted of simple arson with damages of *less* than $500.00.  The maximum term of imprisonment for that charge is five years.  La.R.S. 14:52(C).  The trial court sentenced the defendant, a first time offender, to three years imprisonment, suspended, six months in the parish jail, five years supervised probation and ordered that the defendant make restitution.  Although a panel of this court vacated the sentence because the trial court had failed to state the amount of restitution, it found that the suspended sentence and the imposition of jail time as a condition of probation was not excessive.

The defendant in this case was sentenced to six years at hard labor, suspended, with three years of supervised probation and, as a condition of probation, twelve months imprisonment, not at hard labor, in the parish jail.  The maximum sentence for simple arson with damages over $500.00 is fifteen years at hard labor. The defendant was ordered to pay a fine of $1,000.00 plus court costs.  The maximum fine for simple arson with damages over $500.00 is $15,000.00.

The offense in this case indicates more egregious facts than the offense in *Roy*, 606 So.2d 77.  Although the defendant herein is also a first offender, he was convicted of simple arson with damages *over* $500.00 and ordered to pay restitution totaling $20,825.00.  There were multiple victims in this case and the defendant could have been charged individually with each offense, thus increasing his sentencing exposure.  Further, he could have been sentenced to a maximum term of fifteen years at hard labor.

15

Therefore, we find that the defendant's sentence is not constitutionally excessive.

*Deterrence*

The defendant argues that the trial court erred in "sentencing defendant unnecessarily harshly in order to send a message to others." He contends that deterrence to others has never been a basis for sentence in Louisiana jurisprudence.

We find the defendant's contention unpersuasive. Deterrence, for a particular defendant and others, has long been recognized as a legitimate sentencing object. *State v. Howard*, 263 So.2d 32 (La.1972); *State v. Lloyd*, 42,793 (La.App. 2 Cir. 12/5/07), 973 So.2d 141. We note that the supreme court recently reiterated the appropriateness of both general and specific deterrence as a sentencing consideration in *State v. Strother*, 09-2357 (La. 10/22/10), 49 So.3d 372.

Here, the trial court specifically stated that it was imposing sentence "[n]ot only [as] deterrence to you not to do this again but [as a] deterrence to other[s] who might consider or think about setting fire to the forests in Vernon Parish[.]" It was permissible for the trial court to consider deterrence to others in imposing sentence, so long as it adequately particularized the sentence to the defendant. As discussed above, the trial court gave lengthy reasons for imposing sentence and noted many factors which it considered in fashioning the defendant's sentence. In particular, after discussing deterrence with regard to not only the defendant, but others, the trial court reiterated that it had considered the severity of the offense, the defendant's age and lack of a prior criminal record in determining sentence. We find that the trial court did not err in considering deterrence to others as a factor in imposing sentence.

16

Therefore, the defendant's assignments of error regarding the alleged excessiveness of the sentence are without merit.

*Denial of the Motion for Reconsideration of Sentence*

In his fifth assignment of error, the defendant contends that the trial court erred in denying his motion for reconsideration of sentence without a contradictory hearing.

Louisiana Code of Criminal Procedure Article 881.1 addresses motions for reconsideration of sentence. It states, in relevant part:

> B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
>
> . . . .
>
> D. The trial court may deny a motion to reconsider sentence without a hearing, but may not grant a motion to reconsider without a contradictory hearing. If the court denies the motion without a hearing, the party who made or filed the motion may proffer the evidence it would have offered in support of the motion.
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

The defendant's motion for reconsideration alleges that his sentence was excessive "as a result of no prior criminal record and his age in addition to other facts." The trial court denied the motion without a hearing, stating, "[t]he Court specifically and clearly stated the factors it considered in sentencing the defendant. Among those stated factors were the age and lack of criminal record of the defendant. Therefore, there is no need for another hearing." On appeal, the defendant argues that the trial court only addressed the defendant's age and lack of criminal record in

17

denying the motion and failed to consider the "other factors" alleged in the motion for reconsideration.

Article 881.1 clearly permits the trial court to deny the motion for reconsideration without a hearing. Further, Article 881.1 requires the motion to set forth "specific grounds on which the motion is based." Failure to raise specific grounds precludes the defendant from urging any additional ground on appeal. *Id.* The trial court addressed the specific grounds alleged by the defendant in denying the motion. The defendant did not allege any other specific grounds in his motion for reconsideration; therefore, the trial court did not err in denying the motion without a hearing.

This assignment of error is without merit.

*Validity of the Indictment*

In his sixth assignment of error, the defendant asserts that the sentence does not rest upon a valid indictment. The defendant argues that, because the original bill of information was amended and a written amended bill of information was never placed into the record, the indictment is invalid.

The original bill of information, filed on June 16, 2008, alleges that the defendant "did unlawfully commit the offense of simple arson" in violation of La.R.S. 14:52 and does not mention the amount of damages. The original bill of information lists Campbell Timberland and Forest Capital as the victims. The defendant filed a Motion for Bill of Particulars, which was satisfied by the State on July 1, 2008.

On February 5, 2010, the State filed a "Motion to Amend Bill of Information." Therein, the State alleged damages of more than five hundred dollars and listed Hancock Forest Management as an additional victim. On February 8, 2010, after the

jury venire was qualified, the defendant was arraigned on the new bill, pled not guilty, and specifically stated that there was no objection to going forward with the trial on that date. Additionally, the defendant did not object to the Motion for Amended Bill of Information.

Louisiana Code of Criminal Procedure Article 384 addresses information(s). It states:

> An information is a written accusation of crime made by the district attorney or the city prosecutor and signed by him. It must be filed in open court in a court having jurisdiction to try the offense, or in the office of the clerk thereof.

The purpose of the bill of information is to inform the defendant of the charges against him; further details are provided in the bill of particulars. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367. Thus, the technical insufficiency of a bill of information may not be asserted after conviction where the defendant (1) was fairly informed of the charge against him by the bill; (2) did not raise an objection to the bill prior to the verdict; and (3) may not be further prosecuted, as determined by examination of the pleadings and the evidence for the present conviction. *State v. Butler*, 41,985 (La.App. 2 Cir. 6/20/07), 960 So.2d 1208, *writ denied*, 07-1678 (La. 5/9/08), 980 So.2d 685.

In this case, a written bill of information was filed into the record at the institution of prosecution in this case. Approximately eighteen months prior to trial, the defendant filed a "Motion for Bill of Particulars, Discovery, and Production," and was provided with discovery by the State. The discovery included damage estimates from the victims, which put the defendant on notice of the number of alleged victims and the amount of the alleged damages.

19

The State thereafter filed a Motion to Amend Bill of Information. The Motion to Amend contained all of the information required in a bill of information and was filed into the record. Notably, the State, the defendant and the trial court referred to the "Amended Bill of Information" several times when the defendant was re-arraigned. The defendant not only did not object to the amendment, but stated on the record that he had no objection to proceeding with trial on that date. Therefore, the defendant has not shown that he was prejudiced by any error in the bill of information.

This assignment of error is without merit.

*Accuracy of Restitution Values*

In his seventh assignment of error, and his third *pro se* assignment of error, the defendant contends that the amount of restitution is not accurate. The defendant bases this contention, in part, upon an assertion that the experts that provided the damage valuations were not qualified.

Louisiana Code of Evidence Article 702 permits expert opinion testimony in certain circumstances. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The trial court's determination with regard to an expert's qualifications and whether the expert is competent to offer opinion testimony in a specific area is subject to an abuse of discretion standard of review. *Hinchee v. Soloco, L.L.C.*, 07-770 (La.App. 3 Cir. 12/5/07), 971 So.2d 478, *writ denied*, 08-65 (La. 3/7/08), 977 So.2d 911.

Three witnesses testified about the damages to their employer's property. Mr. Leeper was accepted as an expert on timber valuation by the court and testified that his employer, Campbell Timberland, sustained damages due to the fire in the amount of $8,239.00. Mr. Leeper's qualifications as an expert in timber valuation include over thirty-five years of experience in forestry management and over one thousand timber valuations. Mr. Leeper's qualifications were subject to cross-examination, and he was accepted as an expert without objection by the defendant.

The defendant subjected Mr. Leeper's valuation to vigorous cross-examination, pointing out that he had initially valued the damages at $160,000.00 and subsequently revised them to $8,239.00. Mr. Leeper attributed this discrepancy to a second inspection of the property, which substantially lowered the amount of damaged acreage and that many of the trees that he had feared were completely dead had regenerated. The defendant also questioned Mr. Leeper thoroughly about his method of valuation. Mr. Leeper noted that, even assuming that the timber completely recovered, there was a lost opportunity cost suffered by Campbell Timberland.

Mr. Harkreader testified regarding the damages to Hancock Forest Management. He placed the value at $12,019.00. Mr. Harkreader had worked in the forestry industry for thirty-two years and had performed "well over five hundred" timber valuations. His qualifications were similarly cross-examined by the defendant and, over objection, he was accepted as an expert in the field of timber valuation by the trial court. The defendant cross-examined Mr. Harkreader's valuation, questioning his methods and pointing out that his initial valuation of the damages was approximately $29,000.00. Mr. Harkreader stated that the time that the company had put into growing the timber had value. Further, he testified that eighty acres of

21

Hancock's timber was burned. He estimated that, out of that eighty acres, thirty percent of the timber was lost.

Mr. Williams testified regarding the damages to Forest Capital, which he valued at $567.00. Mr. Williams testified that he had been in the forestry industry for approximately fourteen years and had performed timber valuations over one hundred times. Like Mr. Leeper and Mr. Harkreader, his qualifications were subjected to cross-examination by the defendant. Over the defendant's objection, Mr. Williams was accepted as an expert in timber valuation by the trial court.

Mr. Williams testified that the damaged acreage owned by Forest Capital was comparatively low. Further, he testified that most of the trees on Forest Capital's property had recovered somewhat. He specifically stated that, even if the trees recovered completely, they would take an extra three or so years to grow because they were repairing the damage caused by the fire. Mr. Williams' methodology and valuation was similarly cross-examined by the defendant.

The defendant makes a conclusory assertion that all three experts were not qualified. Each had long experience in the timber industry and substantial experience in timber valuation. The defendant had an opportunity to cross-examine each about their methodology and conclusions. When he did so, the experts spoke at length about the methodology they used and why it was preferable to other methods. They all stated that, contrary to the defendant's contention, even if the timber recovered completely, there was a "lost opportunity cost" that their employers suffered because of the time it would take for the timber to recover. Additionally, there was testimony that some of the trees were completely dead and therefore, a total loss. Thus, the trial

22

court did not abuse its discretion in accepting these three witnesses as experts and in accepting their valuations as the appropriate amount of damages for restitution.

This assignment of error is without merit.

*Prosecutorial Misconduct*

The defendant, in his second *pro se* assignment of error, asserts that the tape of his in-custody interview was edited to exclude beneficial information. He argues:

> They asked if it was ok to tape my statement. I told them I did not mind as I had nothing to hide. This questioning and taping lasted just over two hours. Detective Yates, Charles Earl and myself were present. When they played this tape in Court, it lasted right at 12 minutes. They had taken anything that benefitted me out of the tape that they played in Court to the jury. I asked Mr. Fontenot [the defendant's trial attorney] why this should not be considered fraud since they did not play all that was said on the tape. He told me that they do it all the time. I told him that I think they should have to play the whole tape because most of it benefitted me. Again he told me they do it all the time and my first mistake was making the statement without a lawyer present. I informed him I was not a career criminal so I did not know anything about that.

Detective Yates testified that he interviewed the defendant and recorded the interview. He testified that he read the defendant his *Miranda* rights and that the defendant signed and acknowledged the "YOUR RIGHTS" form. The form, dated February 26, 2008 at 1357 (1:57 p.m.), was admitted into evidence. The taped interview was transcribed, and a copy of the transcription was provided to the defendant on July 1, 2008.[6] The transcript is dated February 26, 2008. In the transcript, before questioning the defendant, Detective Yates notes that "[t]he time is now 1414 [2:14 p.m.]" and that he, Mr. Greer from Louisiana Forestry, and the defendant are present. At the close of the interview, Detective Yates notes that "[t]he time is 1425 [2:25 p.m.]" These remarks are a contemporaneous notation that the

---

[6] In response to the defendant's discovery request, the State filed a copy of the transcript of the defendant's in-custody interview into the record. That transcript is referenced for purposes of the discussion herein.

23

interview was approximately eleven minutes long. This is substantially similar to the length of the tape that the defendant alleges was played for the jury.

The record does not reveal obvious inconsistencies between the length of the interview and the length of the tape. The defendant had the opportunity to cross-examine Detective Yates regarding any "missing" tape at trial. Further, he does not allege what "beneficial information" was edited from the tape or how he was prejudiced by its omission.

Therefore, this assignment of error is without merit.

## DECREE

For the foregoing reasons, we affirm the defendant's conviction and sentence. However, the matter is remanded to the trial court to specify the manner in which restitution is to be paid in accordance with La.Code Crim.P. art. 895.1.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**