# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**14-122**


**STATE OF LOUISIANA**

**VERSUS**

**JARED J. TIDWELL**


**\*\*\*\*\*\*\*\*\*\***

### APPEAL FROM THE
### TWELFTH JUDICIAL DISTRICT COURT
### PARISH OF AVOYELLES, NO. 170407
### HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Charles G. Gravel**
**Gravel, Cespiva, & Wilkerson**
**Post Office Box 1792**
**Alexandria, LA   71309-1792**
**(318) 487-4501**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jared J. Tidwell**

**John R. Flynn, Jr.**
**Post Office Box 1308**
**Alexandria, LA   71309-1792**
**(318) 487-1230**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jared J. Tidwell**

**Charles A. Riddle, III**
**District Attorney**
**Michael F. Kelly**
**Assistant District Attorney**
**Post Office Box 1200**
**Marksville, LA   71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**AMY, Judge.**

The defendant was convicted of obstruction of justice. The trial court denied the defendant's motion for post-verdict judgment of acquittal and motion for new trial. Thereafter, the State instituted habitual offender proceedings. The defendant was adjudicated a third felony offender, and the trial court imposed sentence of thirty years at hard labor without the benefit of probation or suspension of sentence. The defendant appeals his conviction. For the following reasons, we affirm.

### Factual and Procedural Background

The State alleged that after the murder of Christina Mayeaux,[1] the defendant, Jared J. Tidwell, assisted the perpetrators in tampering with evidence and attempting to cover up the crime scene, most notably by pouring bleach over the victim's body and the surrounding area. The defendant was subsequently indicted for obstruction of justice, a violation of La.R.S. 14:130.1. A jury unanimously found the defendant guilty of that charge.

Thereafter, the trial court denied the defendant's motion for post-verdict judgment of acquittal and motion for new trial. Alleging that the defendant was a fourth felony offender, the State instituted habitual offender proceedings. However, the State filed a motion seeking to reduce the habitual offender bill to third felony offender status. The trial court granted that motion and sentenced the defendant to thirty years at hard labor without the benefit of probation or suspension of sentence.[2]

---

[1] Ms. Mayeaux's name is occasionally spelled "Christine" in the record. We use the spelling given by her mother.

[2] The defendant has appealed his sentence pursuant to his habitual offender determination in *State v. Jared J. Tidwell*, 14-123 (La.App. 3 Cir. _/_/_), __ So.3d __.

The defendant appeals, asserting that the evidence is insufficient to support his conviction.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After performing such a review, this court notes no such errors.

*Sufficiency of the Evidence*

The defendant's sole assignment of error concerns the sufficiency of the evidence for his conviction for obstruction of justice, a violation of La.R.S. 14:130.1. The defendant frames this assignment within the context of the trial court's denial of his motion for post-verdict judgment of acquittal and motion for new trial. However, we note that a motion for post-verdict judgment of acquittal tests the sufficiency of the evidence. *See State v. Westmoreland*, 10-1408 (La.App. 3 Cir. 5/4/11), 63 So.3d 373, *writ denied*, 11-1660 (La. 1/20/12), 78 So.3d 140.

The review of insufficiency of the evidence claims is well-settled. In *State v. Dorsey*, 10-216, pp. 42-43 (La. 9/7/11), 74 So.3d 603, 633, *cert. denied*, __ U.S. __, 132 S.Ct. 1859 (2012), the supreme court stated:

> When an appellate court reviews a sufficiency of the evidence claim, the standard applied is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). This standard has been codified by our legislature in Louisiana Code of Criminal Procedure article 821, which provides: "A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." When circumstantial evidence is used to prove the commission of the offense, Louisiana Revised Statute § 15:438 mandates, "assuming every fact to be proved

2

that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Neal*, 00-0674, p. 9 (La. 6/29/01); 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. *State v. Cummings*, 95-1377, p. 4 (La. 2/28/96); 668 So.2d 1132, 1134. Rather, all of the evidence, both direct and circumstantial, must be sufficient under *Jackson* to convince a rational juror the defendant is guilty beyond a reasonable doubt. It is not the function of the appellate court to assess credibility or reweigh the evidence. *Id.*

The determination of the weight of the evidence is question of fact which rests solely with the trier of fact, and the trier of fact "may accept or reject, in whole or in part, the testimony of any witnesses." *State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285.

Additionally, where the identity of the perpetrator is the key issue, not whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002). "[A]s appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency[,]" a single witness's testimony, "[i]n the absence of internal contradiction or irreconcilable conflict with physical evidence," if accepted by the fact finder, "is sufficient support for a requisite factual conclusion." *Dorsey*, 74 So.3d at 634.

The defendant was charged with obstruction of justice, a violation of La.R.S. 14:130.1. That statute, provides, in pertinent part, that:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding

which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

> (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or

> (b) At the location of storage, transfer, or place of review of any such evidence.

La.R.S. 14:130.1(A). *See also State v. Jones*, 07-1052 (La. 6/3/08), 983 So.2d 95.

In this case, the State's theory of the case was that the victim, Christina Mayeaux, was killed on Saturday, December 3, 2011. According to the State, the primary suspects in Ms. Mayeaux's murder were Trampus Bernard (the defendant's uncle), Chad Tidwell (the defendant's cousin), and their girlfriends, Heather Foster and Kayla Guillot. The State contended that the four primary suspects, along with the defendant, attempted to tamper with the crime scene by pouring bleach on Ms. Mayeaux's body and the surrounding area.

Mary Normand testified about the discovery of the body of Ms. Mayeaux, who was her daughter. Ms. Mayeaux lived next door to Ms. Normand. According to Ms. Normand's testimony, Ms. Mayeaux was addicted to pain medication. Ms. Normand stated that, on Friday, December 2, 2011, Ms. Mayeaux had gone to New Orleans in order to obtain pain medication. Ms. Normand spoke with Ms. Mayeaux on the phone after she returned from New Orleans. However, Ms. Normand was unable to reach Ms. Mayeaux on Saturday, December 3, and, when she had not heard from Ms. Mayeaux by Monday, December 5, she had two of her grandsons knock down Ms. Mayeaux's door. Ms. Mayeaux's body was found in the bedroom. Ms. Normand testified that at Ms. Mayeaux's funeral, because

bleach had been poured on her body, her features were distorted and her normally dark hair had turned orange.

Michael Lemoine also testified. According to Mr. Lemoine, his wife's mother and Jared's father are married, thus making Mr. Lemoine the defendant's brother-in-law through marriage. Mr. Lemoine testified that the defendant confessed his involvement in the cover up of Ms. Mayeaux's murder while he and the defendant were talking at a Father's Day gathering and later during a conversation in Mr. Lemoine's driveway.

According to Mr. Lemoine, he and the defendant were talking about Trampus Bernard and Chad Tidwell. Mr. Lemoine testified that his understanding was that Trampus Bernard, Chad Tidwell, Heather Rivas (otherwise referred to as Foster), and Kayla Guillot went to Ms. Mayeaux's house to buy pills and that "whatever they was doing didn't work out right" and "it just got out of hand." Mr. Lemoine testified that the defendant indicated that Ms. Mayeaux was hit in the head with a golf club and stabbed with a pocket knife. However, Mr. Lemoine did not know which of the perpetrators used the knife or the golf club.

Mr. Lemoine further testified that, because Ms. Mayeaux had scratched and bitten the perpetrators, "they" put bleach on her fingernails and throughout the house. In response to the State's question asking how the defendant became involved, Mr. Lemoine stated that one of the perpetrators called the defendant and that he believed it was Chad Tidwell. Mr. Lemoine's understanding was that "they" went back to the crime scene several times. Mr. Lemoine speculated that "they" had keys to the crime scene. On cross examination, during a discussion regarding Mr. Lemoine's use of "they," the following colloquy occurred:

5

[Mr. Larvadain, the defendant's attorney]:  O.K. Now did Jared tell you, looking at your statement, did Jared tell you he went in that house or they went in?

[Mr. Lemoine]: They went in but from my understanding he went in too.

Mr. Lemoine admitted that he had a conviction for domestic violence. However, he maintained that he had not received anything in exchange for his testimony from the State.  Further, Mr. Lemoine admitted that he had used multiple illegal drugs in the past, but stated that he currently does not use any illegal drugs. In response to the defendant's questioning, Mr. Lemoine also maintained that he did not have any vendetta against the defendant and denied that he would obtain some items from his father-in-law if the defendant was not around.

In addition to these witnesses, several officers from the Avoyelles Parish Sheriff's Office testified.  Detective Roland Patterson testified that he took photos of the crime scene.  According to Detective Patterson, there was a slight odor of bleach and he could see liquid around Ms. Mayeaux's body and in the room itself. Upon further examination, Detective Patterson discovered that the body had been doused in bleach, and the bed had been soaked such that the bleach had gone through the bedspread onto the bedlinens.  According to Detective Patterson, the murder occurred likely in the afternoon or early evening on Saturday, December 3, 2011, and the cleanup likely occurred on Sunday, December 4, 2011.  Detective Patterson conceded that he had obtained neither DNA nor fingerprints which would indicate that the defendant was in the house.

Detective Joseph Whitmore testified that Chad Tidwell, Trampus Bernard, Heather Foster, and Kayla Guillot were the prime suspects in Ms. Mayeaux's murder.  According to Detective Whitmore, their investigation revealed that those

6

four were in and around the crime scene at the time of the murder. The defendant's name also came up during their investigation as being in the area around Ms. Mayeaux's house and directly behind it on Saturday, December 3, and Sunday, December 4. Detective Whitmore stated that, although he did not know exactly when Ms. Mayeaux was killed, her loved ones lost contact with her on the evening of Saturday, December 3.

Further, Detective Whitmore testified that he interviewed Mr. Lemoine and that he was "surprised" by Mr. Lemoine's information because some of the information were details that only someone who was at the crime scene or had spoken to someone who was at the crime scene would have known. Specifically, Detective Whitmore pointed to the information that Ms. Mayeaux had been hit in the head with a golf club, that some keys to the house were found, and that numerous trips were made to clean up the crime scene. According to Detective Whitmore, Chad Tidwell and Heather Foster had been staying at Carson Bordelon's house, which was directly behind Ms. Mayeaux's house. Investigators seized a golf club from Mr. Bordelon's house that had Chad Tidwell's DNA on it.

Detective Whitmore conceded that there were no witnesses who saw the defendant at Ms. Mayeaux's house and that he had no scientific evidence that showed that the defendant was ever in Ms. Mayeaux's house. However, Detective Whitmore pointed to phone calls made between the defendant and the primary suspects in Ms. Mayeaux's murder, including one that lasted for more than 48 minutes.

In addition to Detectives Whitmore and Patterson, Detective Jeremiah Honea testified, primarily about his involvement in analyzing the cell phone records of persons relevant to the investigation into Ms. Mayeaux's murder.

Detective Honea testified that he spoke with the defendant about some telephone calls and that the defendant initially told him that there were no phone calls between him and anyone pertinent to the investigation. However, when he spoke with the defendant again, the defendant told him that he spoke with Chad Tidwell on Sunday, December 4, during the Saints game. Detective Honea observed that the Saints game on December 4 started at noon. Further, according to Detective Honea, the defendant denied going to Ms. Mayeaux's house.

Detective Honea testified about a series of text messages and phone calls between the defendant's phone and phones belonging to Trampus Bernard, Chad Tidwell, Heather Foster, and Carson Bordelon. On Saturday, December 3, he noted the following interactions:

- 8:15 p.m. – two phone calls from the defendant to Trampus Bernard with a duration of zero seconds;

- 8:15 p.m. – two text messages from Trampus Bernard to the defendant;

- 9:48 p.m. – text message from the defendant to Trampus Bernard.

On Sunday, December 4, Detective Honea noted the following interactions:

- 1:41 a.m. – phone call from Carson Bordelon to the defendant with a duration of 48 minutes and 13 seconds;

- 7:19 a.m. – two phone calls from Heather Foster to the defendant with a duration of zero seconds;

- 1:43 p.m. – phone call from Heather Foster to the defendant with a duration of 28 seconds;

- 3:41 p.m. – two phone calls from the defendant to Heather Foster, one with a duration of zero seconds and one with a duration of five seconds;

- 4:28 p.m. – text message from the defendant to Heather Foster; and

- 8:18 p.m. – phone call from Heather Foster to the defendant with a duration of two minutes and 50 seconds.

According to Detective Honea, it is not possible to retrieve text messages. Further, it is not possible to know who is using the phone, just which phone number is being used. Additionally, Detective Honea testified that there were no phone records that established the defendant's location near the Mayeaux house. Detective Honea testified that he had no direct proof that the defendant was in Ms. Mayeaux's house the day she was killed. However, Detective Honea testified that Mr. Bordelon saw the defendant at Mr. Bordelon's house on Saturday evening into Sunday morning; that one of Ms. Mayeaux's neighbors saw people moving around in Ms. Mayeaux's house; and that she saw a truck which matched the description of a truck that the defendant was driving at that time.

Detective Honea was also questioned about whether the murder occurred on December 5, and he responded that the police believed that the murder occurred on Saturday, December 3.

The State also offered the testimony of two expert witnesses, Dr. Christopher Tape and Jerry Dubois. Dr. Tape, the forensic pathologist, testified as to the autopsy of Ms. Mayeaux. After reviewing the multiple injuries suffered by Ms. Mayeaux, Dr. Tape stated that his conclusion was that Ms. Mayeaux died as a result of sharp force injuries to the neck and body. Dr. Tape also testified that the maximum depth of the knife used in the attack was approximately two and a half inches and would be consistent with a pocket knife. Further, Dr. Tape noted a blunt force injury to Ms. Mayeaux's forehead that would be consistent with a golf

9

club. Finally, Dr. Tape testified that Ms. Mayeaux had multiple defensive wounds on her hands and arms.

Jerry Dubois, an employee of the Louisiana State Police, testified that bleach and other strong chemicals are very detrimental to DNA profiles. Mr. Dubois testified that DNA was obtained from some of the samples collected at the crime scene, but that there was no DNA from the defendant. According to Mr. Dubois' testimony, a few of the samples contained insufficient DNA for testing, but he could not say whether the reason for that was that the samples were bleached. Further, Mr. Dubois testified that he could not presumptively say that the defendant was at the crime scene.

The defendant offered the testimony of three witnesses. Jackie Tidwell (the defendant's sister) and Clara Coussan both testified about the Father's Day gathering at which the defendant purportedly discussed Ms. Mayeaux's murder and the coverup with Mr. Lemoine. Both women testified that they never heard any such conversation during the gathering and that they would have remembered such a thing. Further, they both testified that everyone "pretty much" stayed together during the gathering. However, both women testified that they arrived at the gathering in mid-day and left just before dark, and that they were not with the defendant and Mr. Lemoine every minute of that time. Jackie Tidwell conceded that she was "mingling" and it was impossible to know everything that was discussed, and Ms. Coussan conceded that it was possible that a conversation occurred without her knowledge.

Janice Tidwell, the defendant's mother, also testified. According to her testimony, the defendant was living with her at the time of Ms. Mayeaux's murder. She testified that she learned about the murder in the newspaper and that the

10

defendant "looked surprised" when she told him about it. Further, Ms. Tidwell testified that the defendant had a 2006 heavy duty pickup truck at that time.

Our review of the evidence, viewed in the light most favorable to the State, indicates that the State offered sufficient evidence to support a conclusion that the defendant committed the crime of obstruction of justice. The State offered evidence that Ms. Mayeaux was killed as a result of multiple sharp force injuries to the head and neck sometime in the afternoon or evening of Saturday, December 3, 2011, and that the primary suspects in her death are Chad Tidwell, Trampus Bernard, Heather Foster, and Kayla Guillot. There was testimony that, during the weekend of December 3-4, Chad Tidwell and Heather Foster were at Carson Bordelon's house, which was directly behind Ms. Mayeaux. There was testimony that witnesses saw people moving around in Ms. Mayeaux's house on the evening of Saturday, December 3, and into the morning of Sunday, December 4. The State also offered evidence that indicated that, when Ms. Mayeaux was found, her body and the surrounding area had been doused in bleach. There was testimony that the bleach damaged Ms. Mayeaux's hair and skin. Further, according to the testimony of Mr. Dubois, bleach would damage any DNA present at the crime scene.

In order to prove that the defendant committed the crime of obstruction of justice, the State had to prove that the obstruction was committed with the knowledge that the act "has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding[.]" La.R.S. 14:130.1(A). "[T]he knowledge requirement is met if the perpetrator merely knows that an act 'reasonably may' affect a criminal proceeding." *Jones*, 983 So.2d at 101. The evidence offered by the State, if accepted by the jury, was sufficient to prove that the events which lead to the death of Ms. Mayeaux would potentially be the subject

11

of a future criminal proceeding and that the perpetrator knew that the act of pouring bleach on the crime scene might reasonably affect that proceeding.

Further, this evidence, if accepted by the jury, satisfies both the second and third requirements that the State prove that the perpetrator tampered with evidence "with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding[,]" and that the tampering be, as relevant to this case, by the "intentional alteration, movement, removal, or addition of any object or substance . . . [at] the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by . . . law enforcement officers[.]" La.R.S. 14:130.1(A)(1). It is sufficient that the perpetrator have the specific intent to distort the results of any investigation, not that it actually do so. *Jones*, 983 So.2d 95.

The defendant's argument is not that the crime scene was not intentionally tampered with, but that he was not a participant in the tampering. However, the evidence, when viewed in the light most favorable to the State, was sufficient such that a reasonable juror could conclude beyond a reasonable doubt that the defendant committed the crime of obstruction of justice by participating in tampering with the crime scene.

The State's primary witness in this regard was Mr. Lemoine. If accepted by the jury, Mr. Lemoine's testimony was sufficient to support a conclusion that the defendant confessed to his involvement in tampering with the crime scene by pouring bleach on Ms. Mayeaux's body and the surrounding area. Mr. Lemoine's testimony also indicated that one of the reasons that the perpetrators poured bleach on the crime scene was to alter or destroy any evidence that was a result of Ms.

Mayeaux scratching her attacker. Although the defendant argues that, in testifying about his understanding of what happened during the murder and the cleanup, Mr. Lemoine did not distinguish between "they" (the perpetrators) and "they" (the perpetrators and the defendant), Mr. Lemoine specifically testified that it was his understanding that the defendant went into Ms. Mayeaux's house. Further, Mr. Lemoine testified as to several details which Detective Whitmore indicated were things that would be known only to someone who was at the crime scene or had been told about by someone who was at the crime scene.

Further, the State offered evidence which, if credited by the jury, corroborated Mr. Lemoine's testimony. Detective Honea testified that, around the time period of Ms. Mayeaux's murder, the defendant received multiple phone calls and text messages from phone numbers associated with either the primary suspects or Mr. Bordelon. Further, when initially questioned about his contacts with the primary suspects, the defendant told the police there were no phone calls between him and any persons of interest, and later admitted to only one phone call during that time period. The defendant argues that he communicated with those persons on a regular basis and that, therefore, the phone calls could have been about matters completely unrelated to any criminal activity. However, it was within the jury's province to make reasonable inferences that the timing of the phone calls related to criminal activity that occurred within that time period, especially given the defendant's later actions in denying that any such contact took place.

Additionally, the State offered evidence which, if accepted by the jury, would indicate that the defendant was seen near the scene of the crime, more specifically at Mr. Bordelon's house, on the weekend of December 3-4, and that a

13

truck matching the description of a vehicle the defendant was using was seen outside Ms. Mayeaux's house during the time when the cleanup occurred.

Here, the jury clearly credited Mr. Lemoine's testimony that the defendant participated in tampering with the crime scene. It was the jury's prerogative to make credibility determinations and the appellate court should defer to the credibility and evidentiary determinations made by the jury. Accordingly, viewed in the light most favorable to the State, we find that a rational juror could have concluded beyond a reasonable doubt that the defendant committed the crime of obstruction of justice.

The defendant also argues, in his reply brief, that Ms. Mayeaux's time of death in the autopsy report is inconsistent with the timeline advanced by the State. The report lists the date of death as December 4, 2011, and the time of death as undetermined. However, the State's witnesses testified that they believed that Ms. Mayeaux died in the afternoon or evening of December 3. Our review of the record indicates that, although the autopsy report was entered into evidence, this issue was not argued by counsel at the defendant's trial. However, we find that this discrepancy does not render the jury's decision irrational. The record indicates that Ms. Mayeaux's loved ones lost contact with her on December 3, but she was not discovered until December 5. With regard to the phone contacts between the defendant and the primary suspects in Ms. Mayeaux's murder, the majority of the contacts occurred on December 4, including one lengthy call at 1:41 a.m. The State argued that the cover up occurred on December 4. Given this evidence, any error with regard to the date and time of death was not so significant as to prevent a reasonable juror from finding that the State proved all the elements of the crime of obstruction of justice beyond a reasonable doubt.

14

Accordingly, this assignment of error is without merit.

## DECREE

For the foregoing reasons, the conviction of the defendant, Jared J. Tidwell, for obstruction of justice is affirmed.

**AFFIRMED.**