**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**25-445**

**STATE OF LOUISIANA**

**VERSUS**

**TERRANCE DWAYNE HAYWOOD**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2931-21
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**CANDYCE G. PERRET**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Candyce G. Perret, Charles G. Fitzgerald, Gary J. Ortego Judges.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**

**Stephen C. Dwight**
**District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Edward K. Bauman, APLC**
**Post Office Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Terrance Dwayne Haywood**

**PERRET, Judge.**

On January 27, 2021, Terrance Dwayne Haywood ("Defendant"), was charged by bill of information with attempted second degree murder, in violation of La.R.S. 14:27 and 14:30.1. On May 20, 2024, the bill of information was amended to include two additional charges: possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1; and obstruction of justice, in violation of La.R.S. 14:130.1. On the same day, Defendant entered a plea of not guilty.

On January 16, 2025, a unanimous jury found Defendant guilty as charged on all counts. On March 21, 2025, the trial court sentenced Defendant to fifty years at hard labor without the benefit of probation, parole, or suspension of sentence on the conviction for attempted second degree murder; twenty years at hard labor without the benefit of probation, parole, or suspension of sentence on the conviction for possession of a firearm by a convicted felon; and forty years at hard labor on the conviction for obstruction of justice. The trial court also ordered the sentences to run consecutively to each other and gave Defendant credit for time served. On April 4, 2025, Defendant filed a Motion to Reconsider Sentence, which was denied on April 21, 2025, without a hearing.

Now, Defendant appeals his convictions and sentences, asserting two assignments of error:

> 1. The evidence presented at trial, when viewed in the light most favorable to the prosecution, was insufficient to find Terrance Haywood guilty of the crimes charged beyond a reasonable doubt.
>
> 2. The sentences imposed by the trial court are constitutionally excessive and were ordered to run consecutively to each other without sufficient reasons.

For the following reasons, we affirm Defendant's convictions and sentences for attempted second degree murder and possession of a firearm by a convicted felon, we vacate Defendant's sentence for obstruction of justice, and remand the case for resentencing in accordance with La.R.S. 14:130.1(B)(2).

## FACTS:

On October 31, 2020, the Lake Charles Police Department responded to a shooting at the intersection of 400 Saint Dizier Street and North Bilbo Street in Lake Charles, Louisiana. When officers arrived at the scene, they found the victim, Fernando Nelson, lying face down in front of a tan pickup truck. Nelson appeared to be suffering from multiple gunshot wounds to the neck, chest, and hand. A witness later identified Defendant, Terrance Haywood, as the shooter.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are three errors patent, and the court minutes of sentencing and the Uniform Sentencing Commitment Order ("USCO") require correction.

First, Defendant notes the trial court imposed an illegally lenient sentence for his conviction of possession of a firearm by a convicted felon. Louisiana Revised Statutes 14:95.1 requires the imposition of a fine of not less than one thousand nor more than five thousand dollars, which was not imposed. Although Defendant acknowledges that this court has the authority to correct an illegally lenient sentence pursuant to La.Code Crim.P. art. 882, Defendant requests this court take no action, citing *State v. Washington*, 24-308, p. 3 (La.App. 3 Cir. 2/12/25), 406 So.3d 579, 583, *writ denied*, 25-985 (La. 1/21/26), 424 So.3d 1093:

2

Although the authority to correct an illegally lenient sentence is granted and discretionary under La.Code Crim.P. art. 882, because this issue was not raised as an error, we decline to take action. *See State v. Brown*, 19-771 (La. 10/14/20), 302 So.3d 1109 (supreme court found the court of appeal erred in vacating an illegally lenient sentence absent any complaint by the State).

The State does not request correction of this error. Accordingly, as in *Washington*, we find no action needs to be taken concerning this error.

Second, we find the sentence imposed for obstruction of justice is illegally excessive and must be vacated. The maximum sentence for obstruction of justice in a case in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, as here, is not more than twenty years at hard labor. La.R.S. 14:130.1(B)(2). The trial court imposed a forty-year sentence. Accordingly, we hereby vacate Defendant's sentence for obstruction of justice and remand this matter for resentencing in accordance with La.R.S. 14:130.1(B)(2) on that conviction.

Third, we find there is an error concerning the advisement of the time limit for filing an application for post-conviction relief. The sentencing transcript indicates the judge stated, "I am required to tell you at this time that you have two years from when the judgment of conviction of sentence has become final, to file any post-conviction relief petitions." Louisiana Code of Criminal Procedure Article 930.8(A) states, in pertinent part, "No application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922[.]" Recently, in *State v. Terry*, 25-170, pp. 3–4 (La.App. 3 Cir. 11/19/25), 425 So.3d 188, 191, this court discussed its

3

recent jurisprudence adopting a different procedure to provide a defendant with notice of the correct time period for filing an application for post-conviction relief:

> Recently, a majority of this court's judges have chosen to allow the appellate opinion to serve as notice of the time limitation for filing an application for post conviction relief. *See State v. King*, 24-367 (La.App. 3 Cir. 2/19/25), 405 So.3d 1162, *writ denied*, 25-381 (La. 5/20/25), 409 So.3d 223; *State v. Washington*, 24-308 (La.App. 3 Cir. 2/12/25), 406 So.3d 579; *State v. Mason*, 24-407 (La.App. 3 Cir. 2/5/25), 407 So.3d 822, *writ denied*, 25-270 (La. 4/29/25), 407 So.3d 620.
>
> In *Washington*, 406 So.3d at 583 (alterations in original), this court stated:
>
>> We agree with the first, second, and fifth circuits who have allowed their opinions to serve as notice to Defendant of the correct time limitation for filing an application for post-conviction relief:
>>
>>> Finally, after the trial court imposed the sentences herein, it failed to advise the defendant of the applicable time period to file an application for post-conviction relief. . . . At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post-conviction relief. **State v. LeBoeuf**, 2006-0153 (La.App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142, <u>writ denied</u>, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Its failure to do so, however, has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. Further, the Article does not provide a remedy for an individual defendant who is not told of the limitations period. **Id**. at 1142-43.
>>>
>>> Out of an abundance of caution and in the interest of judicial economy, we advise the defendant that La.Code Crim.P. art. 930.8 generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.Code Crim.P. arts. 914 or 922. **Id**. at 1143.

> *State v. Folse*, 23-1299, p. 11 (La.App. 1 Cir. 9/20/24), 405 So.3d 645, 654. Accordingly, Defendant is advised that pursuant to La.Code

Crim.P. art. 930.8, no application for post-conviction relief, including applications seeking an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under La.Code Crim. P. arts. 914 or 922.

Thus, this opinion will serve as notice to Defendant of the proper time period for filing post-conviction relief.

*See also, State v. Dugas*, 25-143 (La.App. 3 Cir. 10/15/25), 422 So.3d 867. However, because the case must be remanded for resentencing for the reason discussed above, we find the notice about the time for seeking post-conviction relief should be given by the trial court at resentencing. *See State v. Green*, 25-140 (La.App. 3 Cir. 10/8/25), 421 So.3d 621.

Finally, we find the court minutes of sentencing and the Uniform Sentencing Commitment Order require correction. The trial court imposed Defendant's sentences for attempted second degree murder and possession of a firearm by a convicted felon to be served without the benefit of parole, probation, or suspension of sentence, but this is not reflected in either the court minutes or the USCO. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Thus, the trial court is ordered to correct the court minutes of sentencing and the USCO to reflect that Defendant's sentences for attempted second degree murder and possession of a firearm by a convicted felon were imposed without the benefit of parole, probation, or suspension of sentence.

## ASSIGNMENT OF ERROR NUMBER ONE:

In his first assignment of error, Defendant claims the evidence presented at trial, when viewed in the light most favorable to the prosecution, was insufficient to find him guilty of the crimes charged beyond a reasonable doubt.

In *State v. Major*, 03-3522, pp. 5–7 (La. 12/1/04), 888 So.2d 798, 801–02

(alterations in original), the supreme court addressed the standard of review for

claims raising sufficiency of the evidence and stated, as follows:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See State v. Captville,* 448 So.2d 676, 678 (La.1984). That standard dictates that to affirm the conviction the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that the State proved all elements of the crime beyond a reasonable doubt. *State v. Johnson,* 03-1228, p. 4 (La.4/14/04), 870 So.2d 995, 998; *Captville,* 448 So.2d at 678. Further, when the conviction is based on circumstantial evidence, La. R.S. 15:438 sets forth the rule that "assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence." However, La. R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; rather it serves as a helpful evidentiary guide for jurors when evaluating circumstantial evidence. *State v. Toups,* 01-1875, p. 3 (La.10/15/02), 833 So.2d 910, 912; *State v. Chism,* 436 So.2d 464, 470 (La.1983). When evaluating circumstantial evidence, the trier of fact must consider

>> the circumstantial evidence in light of the direct evidence, and vice versa, [and] the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

>> *Chism,* 436 So.2d at 469.

> Finally, constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt. *State v. Mussall,* 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is

given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law. *Johnson* at pp. 4-5, 870 So.2d at 998; *Toups* at p. 3, 833 So.2d at 912.

As further stated in *State v. Hughes*, 05-992, pp. 5–6 (La. 11/29/06), 943 So.2d 1047, 1051.

[W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La. 4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La. 4/11/00), 776 So.2d 1134, 1147.

## *Evidence Presented at Trial*

On October 30, 2020, Detective Cameron Hicks of the Calcasieu Parish Sheriff's Office went to the Scottish Inn Motel in Lake Charles, Louisiana, to investigate a robbery. An individual, later identified as Sidney Clement, claimed that someone with a law enforcement badge stole $80 from him. When Detective Hicks got to the motel, he knocked on room 279, and a man, later identified as Fernando Nelson, opened the door and let him in. According to Detective Hicks, there were two other individuals in the room: Defendant, Terrance Haywood, and LaQuinta Young. In the bodycam footage, Defendant was wearing a white jacket, white pants, and a black hat. Detective Hicks then removed everyone from the room so he could conduct a search. After searching the room, he did not find any weapons or evidence of a robbery, such as cash or drugs. He subsequently questioned Nelson about the alleged robbery, and Nelson claimed that he presented a Marshal's Office card to

7

spook Clement from the room.[1] Thereafter, Detective Hicks searched the room for the Marshal's Office card and Nelson's wallet, but he could not locate either item.[2] Nelson eventually informed Detective Hicks that he previously worked as an informant for the Combined Anti-Drug Task (CAT) team.[3] Detective Hicks noted Haywood and Young were near Nelson when he made the statement about him being an informant:

> Q     When Mr. Nelson -- you mentioned he made this disclosure himself, and could you just describe the location and who was present at the time that this disclosure was made?
>
> A     Yeah. Mr. Nelson had stated that to me right outside of the motel room door. Everybody on scene was there. It was me, Sgt. Ryan Tarver, Senior Corporal Brian Soileau, as well as LaQuinta Young and Terrance Haywood. They were, I believe, to the left side of the door. We were on the right side. It was within 10 to 15 feet when he said it. He started saying it as a whisper, but I guess he got excited. I don't know what was in his mind to begin speaking so loudly, but I thought it was within an ear shot of everyone and that's why I documented it in my report and I also contacted a narcotics detective to let her know that the information may be out that he's an informant.
>
> Q     Based on your experience in law enforcement, did you find it unusual that an informant would make this type of disclosure so publicly?
>
> A     Yes. That was the first time it's ever happened.

The next day, on October 31, 2020, the Lake Charles Police Department received a call regarding a shooting at the intersection of 400 Saint Dizier Street and North Bilbo Street in Lake Charles, Louisiana. Lieutenant Judith Wall of the Lake Charles Police Department subsequently responded to the shooting. When she

---

[1] Nelson claimed that Clement tried to get Young to engage in sexual intercourse with him.

[2] Nelson told Detective Hicks that he gave some woman his wallet and that the Marshal's Office card was in his wallet.

[3] Nelson informed Detective Hicks that he was an informant with approximately "100 cases open" while standing near Defendant.

arrived at the scene, she noticed two men standing in the street, so she asked them for the whereabouts of the victim and the shooter. They informed her that the victim was located by a truck in the field and that the shooter fled north on foot. She subsequently found the victim, Fernando Nelson, lying face down in front of a tan, Ford truck. She rolled Nelson over and noticed his shirt was covered in blood. She opened Nelson's shirt and observed multiple gunshot wounds to his chest. In the bodycam footage, Lieutenant Wall asked Nelson who shot him, and Nelson stated, "he set me up." Nelson also said that the shooter had on a Spider-Man mask and was riding a bicycle. However, Nelson said he did not recognize the shooter. Another officer rendered aid to Nelson, so Lieutenant Wall went to gather more information about the shooter from witnesses. One witness, Raymond Durousseau ("Durousseau"), said the shooter was wearing a mask. Another witness, Tyrone Thomas ("Thomas"), said the shooter ran north and then east on Fournet Street, where he threw something in a trash can and changed clothes. Later, Lieutenant Wall assisted Officer Milred Joseph with the apprehension of a suspect, later identified as Defendant, Terrance Haywood.

Former Lake Charles Police Department Officer Mildred Joseph also responded to the shooting. According to Officer Joseph, dispatch received the call at 11:36 a.m., and she arrived on the scene at 11:39 a.m. There, she saw Nelson covered in blood suffering from multiple gunshot wounds. Her duties at the scene included retrieving a first-aid kit and assisting with crowd control. Eventually, Thomas approached her and gave her more details about the shooter. Thomas said he saw a male run north from the location of the shooting to a house, where he dumped an

item in a trash can and changed into white clothing.[4] Thomas also claimed that officers passed the shooter as they arrived at the scene. Soon after, Officer Joseph noticed an individual who matched the description of the shooter walking near the scene. Thomas subsequently confirmed the individual was the male he saw running from the scene, so Officer Joseph apprehended him. The suspect was later identified as Defendant, Terrance Haywood. In Officer Joseph's bodycam footage, Defendant can be seen wearing a white jacket and white pants, which was the same outfit he had on in Detective Hicks' bodycam footage from the day before.

Corporal Brennan Bernat of the Lake Charles Police Department also responded to the shooting. When Corporal Bernat arrived at the scene, he observed Nelson lying on the ground with gunshot wounds to the neck and hand. Corporal Bernat claimed that while in the ambulance, Nelson said "the man in the truck set him up."[5]

On the day of the shooting, Thomas testified that he heard approximately three gunshots while he was working in the area. He also saw someone with a Spider-Man mask run to a house on Fournet Street, throw something in a trash can, grab light-colored items off a clothesline, and change clothes on the porch. He did not see the individual's face due to the mask.

Sergeant Dustin Fontenot of the Lake Charles Police Department acted as the lead investigator and discussed the evidence collected in this case. At the scene of

---

[4] We note, at approximately 01:30 on Lieutenant Wall's dashcam footage, a black male with a white outfit is seen walking down the street near the scene of the shooting.

[5] Although we are unable to view Corporal Bernat's bodycam footage due to issues with the evidence disc, we note that on Lieutenant Wall's and Officer Joseph's bodycam footages, Nelson stated that "he set me up" whenever they came in contact with him.

the shooting, officers recovered four 9mm shell casings and bloody clothing. Sergeant Fontenot eventually received information about a secondary scene:

> A    I was advised that the subject had fled northbound and a witness observed the subject changing clothes in front of 406 Fournet Street, which was on the porch. That person had worked across the street, heard the gunshots, and came out and saw. There's also -- I learned that a witness saw the subject place something in a trash can and the subject was wearing a mask, a Spider-Man mask, and ended up changing clothes into a white jumpsuit.

> Q    Based on that information that you were provided from the initial officers on scene, being the lead detective, did you feel it was necessary to respond to that secondary location at 406 Fournet Street?

> A    Yes.

> Q    Why is that?

> A    Due to the potential evidence that was there and there were officers already there with eyes on it to make sure nothing was tampered with.

At 406 Fournet Street, officers discovered a Spider-Man mask near the mailbox. There were also two trash cans. Officers searched through both trash cans and located an Igloo container inside one of them. Within the container, there was a Hi-Point 9mm firearm wrapped in a yellow shirt. In Lieutenant Wall's bodycam footage, witness Thomas said he believed the shooter had on a yellow shirt. Officers also recovered a black hat and a black jacket that were confirmed not to belong to owner of the residence and should not have been in the yard.

Monica Quaal, an expert in the field of DNA analysis, extracted DNA from the Spider-Man mask, the Hi-Point 9mm handgun, and the handgun's magazine, and used Defendant's buccal swab as a reference. The outside of the mask had one major contributor that was consistent with Defendant's buccal swab and at least two minor contributors, which were too complex for comparison. The inside of the mask had one major contributor that was consistent with Defendant's buccal swab and one

minor contributor, which was too partial for comparison. The handgun had at least three contributors but there was "too much" DNA to use for comparison. The magazine did not have enough DNA to use for comparison.

Cheryl Swearingen, an expert in firearm comparison, compared the Hi-Point 9mm handgun found at 406 Fournet Street to the shell casings found at scene of the shooting. Her findings concluded that the shell casings were fired from the Hi-Point 9mm handgun.

On the day of the shooting, Defendant, also known as "Teddy," contacted Durousseau and asked Durousseau to give him and Nelson a ride from the Scottish Inn Motel to Westlake, Louisiana, so Nelson could pick up some money. Durousseau did not know Nelson personally, but he agreed to give Nelson and Defendant a ride because Defendant said he would give Durousseau twenty dollars. While on their way to Westlake, Defendant asked Durousseau to make a detour, which led to them stopping at a vacant lot. Defendant claimed that he needed to drop off some money to a family member for a Halloween party in the area. Defendant ended up leaving to go to his family member's house, so Durousseau and Nelson talked and waited on Defendant to return.[6] Eventually, a man with a Spider-Man mask passed in front of them and shot Nelson, which caused Nelson to stumble backwards and fall to the ground. Durousseau took off running to the house next door because he thought he was going to get shot too. The resident subsequently called 911. Durousseau ultimately denied hearing gunshots; he thought he heard firecrackers at a distance.

---

[6] At some point, Durousseau and Nelson got out of the vehicle.

Fernando Nelson, the victim, and Defendant had known each other for approximately twenty years and never had any disagreements. Nelson recalled the night of the shooting as follows:

Q      Now, I want to stop you, Mr. Nelson. I'm asking you about Halloween night of 2020. I think you mentioned that you were shot that day, right?

A      Okay. That night?

Q      Halloween, October 31st, was that the day you were shot?

A      Yes sir, I think it was.

Q      Could you explain for the jurors where you were shot?

A      Okay. I was shot here in the chest, in the neck, and through the hand on that day after being given a ride by Mr. Hayward and another guy.

Q      Another guy?

A      The older guy that he had got to take me -- giving me a ride to go get money from my boss. We made a couple of stops on the way there, Randy Blanchard's Auto Dealership, and then we went to the pawn shop where I pawned a weedeater [sic] and he then said he needed to make a stop on the way to where we [were] going.

Q      When you say he, who do you mean?

A      Mr. Haywood, and had us wait on the corner in the Rice Mill area, parked in a field. [He] [t]old us to wait on him right there, where we stayed about 45 minutes, and about 45 minutes later I see the bicycle coming around the corner. The guy got [sic] on a Spider-Man mask, shooting. So, I ran to the front of the truck and ducked down and I ducked down he had ran up on me and fell on top of me with the gun and as I tried to hold the gun he continued to fire saying, *What you try to do, [BENCH?* [sic] And I blacked out after that, but the bicycle he rode in on, I knew it was him because of the bike. He had rode [sic] the bike to my motel room.

According to Nelson, the same bicycle Defendant rode to Nelson's motel room was the bicycle used by the individual who shot him. Nelson saw Defendant ride that bicycle numerous times. Nelson also recognized Defendant's voice, which

13

led him to believe Defendant was the shooter. Nelson said that whenever he, Defendant, and Durousseau left to go to Westlake, the bicycle was still in his motel room and that he was the only person with a key. However, Young was in the motel room, so she could have opened the door for Defendant.[7] Nelson claimed that Defendant left the vacant lot, went to the motel room, and then rode the bicycle back to the lot to shoot him. Nelson admitted that he and a couple of people smoked crack the morning of the shooting. Nelson believed Defendant shot him due to the incident that occurred the night before with law enforcement; Defendant thought that when Nelson opened the door, Nelson "was trying to set him up." According to Nelson, he opened the door without looking to see who it was knowing there were drugs in the room. Nelson also mentioned that people knew that he was an informant even before speaking with Detective Hicks.

Brandon Roy, a probation officer with the Louisiana Department of Probation and Parole, supervised Defendant while he was on felony supervision for his conviction for possession of a Schedule II controlled dangerous substance. He claimed Defendant's sentence was completed in 2013, and at the time of the shooting, Defendant was prohibited from owning or possessing a firearm.

*Arguments in Brief*

Defendant argues that the evidence presented at trial, when viewed in the light most favorable to the prosecution, was insufficient to find him guilty of the crimes charged beyond a reasonable doubt as no eyewitness positively identified him as the shooter and there was no concrete DNA evidence.[8] According to Defendant, a

---

[7] Young died before trial began.

[8] Defendant's argument primarily focuses on the fact that no witness positively identified him as the shooter regarding his attempted second degree murder conviction. However, Defendant

witness, Thomas, stated that he was the shooter. However, Defendant notes that Thomas admitted at trial that he could not positively identify the shooter because the individual was too far away and wore a mask. Moreover, Defendant contends that the victim, Fernando Nelson, could not recall his assailant on the day of the shooting but identified Defendant as the shooter on the day of trial based upon a bicycle. According to Defendant, the State primarily focused on his DNA being found inside and outside of the mask, but Defendant notes there were several other DNA contributors as well. Likewise, Defendant proclaims the State tried to establish motive by implying the shooting occurred due to Defendant finding out Nelson was a confidential informant. Yet, Defendant claims that many people, including himself, already knew that Nelson was a confidential informant prior to that night. All in all, Defendant maintains that the evidence presented at trial was insufficient to identify him as the shooter beyond a reasonable doubt.

Contrarily, the State argues that evidence presented at trial was sufficient to find Defendant guilty of the crimes charged beyond a reasonable doubt, as both the evidence and testimony of witnesses support the fact that Defendant was the perpetrator of the offenses. According to the State, witness Thomas identified Defendant as the person he saw running to 406 Fournet Street, throwing something in a trash can, and changing into light clothing. Furthermore, the State notes Defendant was arrested wearing the same white outfit he was seen wearing on Detective Hicks' bodycam from the day before. Likewise, the State asserts the Spider-Man mask found at 406 Fournet Street had traces of Defendant's DNA. Lastly, the State notes the shell casings found at the scene of the shooting matched

does not address or present any specific arguments challenging the sufficiency of the evidence for his convictions for possession of a firearm by a convicted felon and obstruction of justice.

15

the firearm found in the trash can at 406 Fournet Street. Therefore, the State contends the evidence was sufficient to sustain the verdicts beyond a reasonable doubt.

*Attempted Second Degree Murder*

First, Defendant challenges the sufficiency of the evidence to convict him of attempted second degree murder. Defendant argues that there was insufficient evidence to support his conviction for attempted second degree murder as no eyewitness positively identified him as the shooter and there was no concrete DNA evidence.

Louisiana Revised Statute 14:30.1 defines second degree murder as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]" An attempt, as defined in La.R.S. 14:27(A), involves "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending toward the accomplishing of his object is guilty of an attempt to commit the offense intended[.]"

> To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. *State v. Huizar,* 414 So.2d 741 (La.1982). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); *State v. Butler,* 322 So.2d 189 (La.1975); *State v. Martin,* 92-0811 (La.App. 5 Cir. 5/31/94), 638 So.2d 411.

*State v. Bishop*, 01-2548, p. 4 (La. 1/14/03), 835 So. 2d 434, 437. Firing multiple gunshots are indicative of specific intent to kill. *State v. Watson*, 24-350 (La.App. 3 Cir. 11/27/24), 403 So.3d 63, *writ denied*, 25-15 (La. 2/25/25), 401 So.3d 664.

16

In *State v. Barconey*, 17-871 (La.App. 3 Cir. 3/7/18), 241 So.3d 1046, the defendant argued that there was insufficient evidence to convict him of second degree murder, as the prosecution failed to prove that he was one of the individuals who participated in the murder of the victim. The defendant further claimed that even though his DNA was found inside a mask recovered at the crime scene, the evidence did not prove that he was present at the time of the murder. In affirming the defendant's conviction, this court stated:

> The State's DNA expert, Ms. Suchanek, testified that Defendant was the major contributor of DNA found on the black ski mask recovered from the crime scene. Both Mr. Willis, and his wife Mrs. Pappion, testified that the intruders had their faces covered, with Mr. Willis stating two were wearing ski masks. Additionally, Defendant's nephew and codefendant, Mr. Carter, testified that not only was Defendant one of the intruders, but that Defendant was in fact the individual armed with a revolver who shot Mr. Reynaud.

*Id*. at 1051.

Considering *Barconey*, we find the prosecution presented sufficient evidence negating any reasonable probability of misidentification of Defendant. Eyewitness Durousseau stated he saw a man with a Spider-Man mask shoot the victim, Fernando Nelson. Another witness, Thomas, said he saw a man wearing a Spider-Man mask run to a residence on Fournet Street, dispose of something in a trash can, and change into light-colored clothing. Thomas also identified Defendant as the man he saw change clothes at the residence on Fournet Street. In addition to Thomas' identification, forensic evidence revealed the presence of Defendant's DNA inside and outside of the Spider-Man mask recovered from the residence on Fournet Street. Furthermore, the shell casings found at the scene of the shooting matched the 9mm Hi-Point handgun retrieved from a trash can located at the residence on Fournet

Street. Moreover, Nelson testified that the shooter rode on the same bicycle owned and frequently used by Defendant and recognized Defendant's voice.

We find the combined testimony of Durousseau, Thomas, and Nelson, along with the forensic evidence, supports a rational conclusion that Defendant was the perpetrator of the shooting. In addition, we note that Defendant shot Nelson multiple times, which indicates his specific intent to kill. *Watson*, 403 So.3d 63. Therefore, we find there was sufficient evidence to support Defendant's conviction for attempted second degree murder.

*Possession of a Firearm by a Convicted Felon*

In the event Defendant's argument can be construed as attacking the sufficiency of the evidence, we will discuss the evidence presented at trial for possession of a firearm by a convicted felon.

Louisiana Revised Statute 14:95.1(A) (footnote omitted) states, in pertinent part: "It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substance Law which is a felony . . . to possess a firearm or carry a concealed weapon." In *State v. Johnson*, 09-862, pp. 3–4 (La.App. 3 Cir. 2/3/10), 28 So.3d 1263, 1267–68 (alterations in original), this court addressed this issue and stated:

> Accordingly, for the defendant to be convicted of possession of a firearm by a convicted felon: "[T]he State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and, (4) general intent to commit the offense." *State v. Recard,* 97-754, p. 9 (La.App. 3 Cir. 11/26/97), 704 So.2d 324, 329, *writ denied,* 97-3187 (La.5/1/98), 805 So.2d 200. Only general criminal intent must be proved. La. R.S. 14:95.1. "General criminal intent is present . . . when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2). Although the existence of intent is a question of fact, it need not be proven as such

18

and may be inferred from the circumstances of a transaction. *State v. Brown,* 42,188, 42,189, 42,190 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, *writ denied,* 07–2199 (La.4/18/08), 978 So.2d 347.

. . . .

"[C]onstructive possession of a firearm satisfies the possessory element [of La. R.S. 14:95.1]. Constructive possession exists when the illegal object is subject to the defendant's dominion and control." *State v. Brooks,* 99-478, p. 4 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, 339, *writ denied,* 00-1492 (La.5/25/01), 792 So.2d 750 (citations omitted).

We find, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found Defendant guilty of possession of a firearm by a convicted felon beyond a reasonable doubt. As discussed above, the evidence was sufficient to establish that Defendant shot the victim, Fernando Nelson. Furthermore, at trial, Officer Brandon Roy with the Louisiana Department of Probation and Parole testified that Defendant was convicted of felony possession of a Schedule II controlled dangerous substance and that his sentence was completed in 2013. He also said at the time of the shooting, October 31, 2020, Defendant was prohibited from owning or possessing a firearm, as it was within the ten-year cleansing period described in La.R.S. 14:95.1. Thus, we find there was sufficient evidence to support Defendant's conviction for possession of a firearm by a convicted felon.

## *Obstruction of Justice*

In the event Defendant's argument can be construed as attacking the sufficiency of the evidence, we will discuss the evidence presented at trial for obstruction of justice.

At the time of the offense, the statute for obstruction of justice, La.R.S. 14:130.1, stated, in pertinent part:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding . . .:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or

(b) At the location of storage, transfer, or place of review of any such evidence.

In *State v. Loggins*, 23-519 (La.App. 5 Cir. 10/30/24), 397 So.3d 1265, the defendant argued that there was insufficient evidence to support his conviction for obstruction of justice because there was no evidence to demonstrate he intentionally tampered with or removed evidence to thwart the criminal investigation. However, the prosecution claimed that there was support for the defendant's conviction for obstruction of justice as evidence established that the defendant discharged a firearm and then fled the crime scene with it. The fifth circuit affirmed the defendant's conviction, holding:

In the instant matter, we find that the State sufficiently established that Defendant obstructed justice. The surveillance video from the Shell gas station in Kenner showed Defendant leave with the murder weapon in his hand. His brother, Rodgers, testified that Defendant told him that he threw his gun in a trash can at the Shell gas station in Biloxi. Surveillance video from that gas station reflected that Defendant walked to the dumpster. Detective Savoie contacted Waste Management in Biloxi and was told that it was highly unlikely that the discarded firearm could be located. The firearm was never recovered. We find that a reasonable juror could conclude that, by disposing of the gun in a dumpster in another state, Defendant was attempting to distort the results of any criminal investigation or proceeding and avoid future criminal proceedings.

20

*Id.* at 1283.

Considering *Loggins*, we find, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found Defendant guilty of obstruction of justice beyond a reasonable doubt. As previously discussed, the evidence was sufficient to establish that Defendant was, in fact, the shooter. Eyewitness Thomas saw Defendant flee from the scene and run towards a residence on Fournet Street, where he disposed of an item in a trash can. Sergeant Fontenot testified that the firearm used in the shooting, a Hi-Point 9mm, was recovered in a trash can located at 406 Fournet Street and did not belong to homeowner. As such, it was reasonable for the jurors to conclude that by Defendant disposing of the gun in a trash can at 406 Fournet Street, he was attempting to distort the results of any criminal investigation and avoid future criminal proceedings. Therefore, there was sufficient evidence to support Defendant's conviction for obstruction of justice beyond a reasonable doubt.

Accordingly, we find no merit to Defendant's first assignment of error.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Defendant contends the trial court imposed constitutionally excessive sentences and ordered the sentences to run consecutively to each other without sufficient reasons.

Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .

21

E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

At sentencing, Defendant's counsel did not raise an objection as to the excessiveness of the sentences imposed. Defendant later filed a written motion to reconsider sentence. In his motion, Defendant asserted that his sentences were excessive because he "was maxed out on each sentence" and that the sentences were "greater than the facts of the crime." Defendant further claimed that maximum sentences are normally "reserved for the worst offenders and the worst cases" and that he is "not the worst offender." Defendant did not raise the issue of the trial court's imposition of consecutive sentences in his motion to reconsider sentence. In *State v. Pardue*, 22-565 (La.App. 3 Cir. 3/15/23), 359 So.3d 158, this court held that the defendant's failure to raise an argument regarding the trial court's imposition of consecutive sentences in his written motion to reconsider or at the hearing on his motion to reconsider sentence precluded review.

Thus, we find this argument has not been preserved for review, and as such, we will not address this argument. However, we will address whether Defendant's sentences for attempted second degree murder and possession of a firearm by a convicted felon are excessive.

*Standard of Review*

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02),

22

808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

"Generally, maximum sentences are reserved for the most serious violation of the

offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78.

*Sentencing Hearing*

At the sentencing hearing, both the State and defense presented arguments to the trial court. The defense counsel requested the trial court "go easy on" Defendant. In opposition, the State argued that the aggravating factors outweighed the mitigating factors in this case and that Defendant should be sentenced in accordance with La.Code Crim.P. art. 894.1. In addition, the State discussed Defendant's criminal history, noting:

> He does have an extensive criminal history, dating back to, as early as 2003, Judge. He has convictions from 2003 for unauthorized entry of an inhabited dwelling; 2011 for possession of CDS [controlled dangerous substance] II and possession of CDS IV; 2016 for second degree battery; 2018 for possession of a firearm by a convicted felon; and 2020 for possession of synthetic marijuana, first offense and attempted possession of a firearm by a convicted felon, Judge.

Then, the trial court discussed the mitigating and aggravating factors, in accordance with La.Code Crim.P. art. 894.1, stating:

> So[,] Mr. Haywood was found guilty of attempted second degree murder, possession of a firearm by a convicted felon, and obstruction of justice. And do I [sic] think there was overwhelming evidence for all three of those, for conviction on all three of those. And I do think that habitual offender bill definitely could have been filed. But rather than go through that process, I don't think it was necessary, 'cause [sic] I think the sentence can be imposed sufficiently without having -- because I definitely think this could have been a fourth and subsequent offense with the crimes that are involved here. So, on the -- because had you succeeded in your attempt, this would've been a mandatory life sentence, and it wasn't for lack of trying, Mr. Haywood, that you didn't succeed. So anyway, so this [is] a 10 to 50, and you've got at least four prior felony convictions, which this Court's taken into consideration. By the way, I'm considering all these, I mean, look at this §894.1, the sentencing guidelines, which the Court is required to at least look at and consider. This Court is considering: Number one, well, he's not eligible for probation anyway. But number two, number three, for sure, a lesser sentence that [sic] I'm going to be imposing will deprecate the seriousness of the defendant's crime. Under paragraph B(1), the

defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim. Number six, the offender used threats of or actual violence in the commission of the offense. I think number eight is applicable here, 'cause [sic] there was an indication of an informant-type situation, which -- there's an implication that was a reason for it, might've been that he thought he was informing on him, 'cause [sic] eight says the offender committed the offense in order to facilitate or conceal commission of another offense. Number nine, I think may be, well, may or may not be applicable, but regarding significant injury or, you know, to the victim -- well, I mean, it was definitely [a] significant injury, but I'm not sure a significant permanent injury or significant loss to the victim or his family. Ten: Does defendant use a dangerous weapon in the commission of the offense? Eighteen: It deals with discharging a firearm during the commission of the offense, and which has an element, the use of threatened -- the use of physical force. I think 18 and 19 are similar. I don't find any mitigating circumstances at all.

Thereafter, the trial court went on to impose Defendant's sentences:

In any event, based on all the facts and circumstances here, all of the aggravated offenses that I've outlined in Mr. Haywood's criminal history, any consideration of the fact that the State could have filed a habitual offender bill, which I believe would've necessitated a mandatory life in prison sentence. And the fact that he's getting a benefit of term of years, once I complete the sentence. I think it's, anyway, I think the maximum, the 50-year maximum sentence on the attempted second degree murder is appropriate. So I'm going to impose 50 years at hard labor with the Department of Corrections, without benefit of probation, parole, or suspension of sentence, on the attempted second degree murder charge. O[n] the possession of firearm by convicted felon, I'm going to impose the sentence of 20 years, at hard labor without benefit of probation, parole, or suspension of sentence. I'm going to run that sentence consecutive to the 50 years. And on that obstruction charge, that's a zero to 40 year sentencing range. I'm going to sentence you to serve 40 years on that as well. I'm going to order that run consecutive, so all sentences are consecutive. And I think that the – I'll give you credit for any time that you served on the charge. And I think that the benefit that you have here is that you did not -- that you do have a term of years instead of a mandatory life. On a habitual offender bill, you would've had to serve the remainder of your natural life in prison. And the fact that you are getting a term of years is a benefit to you, that the State has elected not to file a habitual offender bill against you. But I think that, you know, the fact that Mr. -- that the victim of this case survived, in spite of your efforts, I just don't think that's something that you should get credit for. And I think the maximum sentence on each of these charges is appropriate.

Now, Defendant argues that his sentences are constitutionally excessive since he received the maximum sentence for each conviction. According to Defendant, maximum sentences are generally reserved for the worst offenders and offenses. Defendant claims that although the trial court considered his criminal history and the seriousness of the crimes, the trial court failed to consider his personal history and potential for rehabilitation. Thus, Defendant contends his sentences are excessive, and he should be resentenced accordingly.[9]

Contrarily, the State argues that Defendant's sentences are not constitutionally excessive. According to the State, the trial court considered Defendant's extensive criminal history and noted that Defendant could have been adjudicated as a fourth felony offender. Moreover, the State notes that maximum sentences have been upheld for similar convictions and offenders. Thus, the State argues that Defendant's sentences are not excessive.

*Attempted Second Degree Murder*

As previously stated, Defendant was convicted of attempted second degree murder. According to La.R.S. 14:30.1 and 14:27, attempted second degree murder requires imprisonment at hard labor "for not less than ten nor more than fifty years" without the benefit of probation, parole, or suspension of sentence. In this case, Defendant was sentenced to fifty years at hard labor, which is the maximum sentence provided by law.

---

[9] Because we have determined that the sentence for obstruction of justice must be vacated, we will only address Defendant's sentences for attempted second degree murder and possession of a firearm by a convicted felon.

In *State v. Moore*, 20-162 (La.App. 3 Cir. 11/12/20), 305 So.3d 966, the defendant was convicted of attempted second degree murder and sentenced to the maximum of fifty years. The defendant repeatedly stabbed the victim, who was his sometime girlfriend and the mother of his child. This court upheld the defendant's sentence, noting that although the defendant's prior convictions were for nonviolent offenses, the defendant was a fifth felony offender. This court further noted that had the defendant been adjudicated as a habitual offender, his sentence could have been no less than fifty years nor more than one hundred years.

In *State v. Sarpy*, 10-700 (La.App. 3 Cir. 12/8/10), 52 So.3d 1032, *writ denied,* 11-46 (La. 6/3/11), 63 So.3d 1006, this court affirmed a fifty-year sentence for attempted second degree murder. The defendant broke into a home and shot both a father and son. The father died as a result his injuries. Ultimately, this court held that due to the nature of the offense and the fact that the defendant committed the crime in conjunction with a murder all while on probation, the defendant's maximum sentence was not excessive.

In *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713, this court found the maximum fifty-year sentence was not excessive for a defendant convicted of attempted second degree murder. The defendant, unprovoked, shot the victim in the back while the victim was lying on the ground after being beaten up by three individuals. The bullet got lodged in the victim's body, which caused irreparable damage. This court held that although the defendant was a first felony offender, the trial court did not abuse its discretion in imposing the maximum sentence, as the defendant had an extensive arrest record and had prior crimes against the person as a juvenile and as an adult.

## *Possession of a Firearm by a Convicted Felon*

Furthermore, Defendant was convicted of possession of a firearm by a convicted felon, which requires imprisonment at hard labor for "not less than five nor more than twenty years" without the benefit of probation, parole, or suspension of sentence. La.R.S. 14:95.1(B). In this case, Defendant was sentenced to twenty years, the maximum sentence provided by law.

In *State v. Tucker*, 22-735 (La.App. 3 Cir. 5/31/23), 368 So.3d 187, the sixty-three-year-old defendant was convicted of possession of a firearm and was sentenced to the maximum of twenty years. The defendant had previously been convicted of armed robbery. This court upheld the defendant's twenty-year sentence, noting that the defendant started committing crimes at nineteen years old, had been on parole twice, committed crimes before his parole was completed, and was considered a fourth felony offender.

In *State v. Charles*, 20-498 (La.App. 3 Cir. 5/5/21), 318 So.3d 356, the forty-five-year-old defendant was convicted of possession of a firearm by a convicted felon and received the maximum sentence of twenty years. This court subsequently affirmed the defendant's sentence, noting that the defendant had a lengthy criminal history, as he was a fifth felony offender. The court also noted that the defendant had a prior conviction for possession of a firearm by a convicted felon, and thus, the maximum sentence was warranted.

In *State v. Stroughter*, 56,559 (La.App. 2 Cir. 11/19/25), 425 So.3d 360, the defendant was convicted of possession of a firearm by a convicted felon and sentenced to the maximum of twenty years. On appeal, the defendant argued that his sentence was excessive given the facts and circumstances of the case. The second

28

circuit subsequently affirmed the defendant's sentence, noting that the defendant needed correctional treatment and had three prior felonies.

We find the trial court did not abuse its broad sentencing discretion as the record in the present case clearly shows an adequate factual basis for the maximum sentences imposed. At the sentencing hearing, the trial court discussed the applicable aggravating factors and the fact that no mitigating factors existed. The trial court also acknowledged the fact that Defendant received a substantial benefit by not being adjudicated as a fourth felony offender. Although Defendant argues that he was not the worst offender and that the crimes committed were not the worst offenses, we find Defendant's lengthy criminal history suggests otherwise. As discussed above, Defendant's imposed sentences are supported by jurisprudence. Accordingly, we find the record supports the trial court's conclusion that lesser sentences would deprecate the seriousness of the offenses committed and find no merit to Defendant's assignment of error.

## DECREE:

Defendant's convictions and his sentences for attempted second degree murder and possession of firearm by a convicted felon are affirmed. However, Defendant's sentence for obstruction of justice is vacated and the case remanded for resentencing in accordance with La.R.S. 14:130.1(B)(2).

Moreover, the trial court is ordered to advise Defendant of the time period for filing an application for post-conviction relief at resentencing. Additionally, the trial court is ordered to correct the court minutes of sentencing and the USCO to reflect that Defendant's sentences for attempted second degree murder and possession of a

firearm by a convicted felon were imposed without benefit of probation, parole, or suspension of sentence.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**